# Jordan *v.* Jordan's Adm'r.

*Trover by Administrator, against Decedent's Children.*

1. *Probate of will, or testamentary paper.*—When a written instrument is testamentary in its character, and is executed in conformity to the provisions of the statute of wills, no matter what may be its form, it can only operate as a will, and rights under it can not be asserted or recognized until it has been admitted to probate in the proper forum.

2. *Whether instrument is will or deed.*—In determining whether an instrument is a deed or a will, when it is properly executed to operate as either, it is not material what it is called on its face, nor how it was received and acted on by the parties claiming under it : the material inquiry is, as to the effect and operation which the maker intended it to have ; and if his intention, as collected from the terms of the instrument, when read in the light of surrounding circumstances at the time of its execution, was that it should not take effect until after his death, should not convey any vested right or interest, but should be revocable during his life, it is testamentary in its nature, and can only operate as a will.

3. *Same.*—The instrument in this case, which was properly executed as either a deed or will, was delivered by the maker to one of the beneficiaries, and was duly recorded as a deed. By its terms, in consideration of natural love and affection, using the words "give, grant, and convey," and speaking of the property as "deeded" and "bequeathed," the maker disposed of all her personal property to the several beneficiaries, who were her children and grand-children, giving specified sums of money to each, with particular articles of personal property ; directing two of her sons to "take charge of all the property herein and elsewhere deeded, and proceed to place the owners thereof in possession of the same, with the least possible delay and expense, after my [her] death " ; also directing "the proceeds of all the personal property and effects not otherwise herein bequeathed " to be equally divided among the persons named, and giving particular instructions as to her burial and the decoration of her grave. *Held,* a will, and not a deed.

4. *Same ; two instruments construed together.—Held,* also, that another instrument, executed on the same day with the former, by which the maker conveyed all her lands, though referred to in the instrument disposing of the personal property, and therefore to be construed together in ascertaining the intention as to each, would not necessarily determine the character of the former instrument, when the terms and provisions of the two are distinct and variant.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. WM. L. WHITLOCK.

This action was brought by the administrator of the estate of Mrs. Elizabeth G. Jordan, deceased, against David C. Jordan, John Jordan, Arethusa A. Jordan, and Alexander Jordan, who were children of said decedent; sought to recover damages for the defendants' conversion of various articles of personal property, particularly described in the complaint, consisting of cattle, horses and mules, corn, oats and wheat, wagons, plows and farming implements, household and kitchen furniture, bank-notes, and money; and was commenced on the 29th February, 1876. The record does not show what pleas were filed, but the cause was tried on issue joined. On the trial, as the bill of exceptions states, "the plaintiff introduced testimony tending to show title in his intestate to the property sued for, its conversion by the defendants, and its value at the time of the conversion;" and the defendants then offered in evidence an instrument of writing, with the probate and certificate of record thereof, under which they claimed the property described in the complaint, and which was in the following words:

"State of Alabama, ⎱ Know all men by these presents, Etowah County. ⎰ that I, Elizabeth G. Jordan, of the county of Etowah and State of Alabama, for and in consideration of the love and affection I have for the following named persons, do give, grant and convey to each of them, as hereinafter named and specified, the following described personal property, of which I am at present seized and possessed, and which I hold in my own right and title, with the conditions and specifications hereinafter named—to-wit: to my beloved grandson, Daniel B. *Murphrey*, son of my daughter, Mary E. *Murphree*, I do hereby give, grant, and convey two hundred dollars in cash; and to Martha A. Chandler, the daughter of Emily Jane Chandler, one hundred and twenty-five dollars in cash; and to Elizabeth G. Chandler, the daughter of Emily Jane Chandler, one hundred and twenty-five dollars in cash, and, as my namesake, one featherbed and bed-clothing for same; and to Mary A. Chandler, the daughter of Emily Jane Chandler, one hundred and twenty-five dollars in cash; and to my grandson, John D. Chandler, the son of Emily Jane Chandler, the sum of one hundred and twenty-five dollars in cash; all of which several sums of money *is* to be paid out of of the proceeds of my personal property; and to my beloved daughter, Arethusa Angeline Jordan, six hundred dollars in cash, out of the money now on hand, and the proceeds of other personal property, and also four feather-beds and bedsteads, and two-thirds of the bed-clothing, one bureau, one wardrobe,

[*Jordan v. Jordan's Adm'r.*]

and six head of cattle, known as her cattle ; also, my buggy, and one horse, to be selected by her own choice out of my stock of horses ; also, twelve months' support, out of my provisions or proceeds of the crops grown on my place ; and to Elizabeth G. Jordan, the daughter of David C. Jordan, one feather-bed and bed-clothing ; and to Elizabeth G. Jordan, the daughter of John Jordan, one feather-bed and bed-clothing. Also, I give to my children, Alexander Jordan, David C. Jordan, John Jordan, and Arethusa A. Jordan, the proceeds of all the personal property and effects not otherwise herein bequeathed ; said proceeds. to be equally divided between the above children, to-wit, Alexander, David C., John, and Arethusa A. Jordan. I also request that my children, herein named, will bury my body by the side of my husband, William G. Jordan, in like manner with him, and decorate my grave in like manner with his ; and I also further request and enjoin upon my son, David C. Jordan, that he take charge of, and manage in the interest, and to the benefit of my daughter, Arethusa A. Jordan, all the real and personal property herein and elsewhere *deeded* unto her, the said Arethusa A. Jordan. I also further request. that my sons, Alexander Jordan and Daniel C. Jordan, shall take charge of all the real and personal property herein and elsewhere *deeded*, and that they proceed to place the owners thereof in possession of the same, with the least delay and expense possible after my death. To all of which I have hereunto set my hand and seal, this, the 25th day of July, one thousand eight hundred and seventy-four."

This instrument was signed by Mrs. Jordan, the plaintiff's intestate, and attested by three witnesses ; and it was admitted to record, as shown by the indorsements on it, on proof by one of the subscribing witnesses, in the prescribed form for the proof of conveyances, on the 27th August, 1874. "It was admitted," the bill of exceptions states, "that this instrument was signed and attested as shown on its face, on the day it bears date, and was delivered to D. C. Jordan, one of the parties therein named ; and that the property, the conversion of which is sued for, is the same property mentioned in said instrument; and that the defendants took possession of said property, and claimed and sold it for the purpose of disposing of it as directed in said instrument ; and that said instrument has never been admitted to probate as a will in the courts of this State. The plaintiff objected to said instrument being read in evidence to the jury, on the ground that it was a will, and not a deed of gift ; which objection the court sustained, and refused to allow the de-

fendants to read the said instrument in evidence to the jury; and they excepted to said ruling."

The defendants offered, also, " to introduce in evidence to the jury the original deed, of which the following is a true copy:" " The State of Alabama, Etowah County, July the 25th day, one thousand eight hundred and seventy-four. Know all men by these presents, that I, Elizabeth Graham Jordan, for and in consideration of the love and affection I have for my children, herein named, to-wit, Alexander Jordan, David Carnes Jordan; John Jordan, and Arethusa Angeline Jordan, do by these presents give, grant and convey unto my children, the said Alexander Jordan, David Carnes Jordan, John Jordan, and Arethusa Angeline Jordan, all the following real estate, lying and being in the county of Etowah, and known and described as follows," describing it by the number of the township, range, and section, " with all the rights, titles and appurtenances thereunto belonging; to have and to hold unto them, their heirs and assigns, forever; excepting one acre from the home tract of land, including the family burying-ground, where my deceased husband, William G. Jordan, now lies buried; the said acre to be laid off in a square form, in such a manner as that the grave of William G. Jordan may be at or near the centre of said acre of land. The said land, as named and described above, shall be divided *equaly* between the above named children, by agreement, or equitable division of the same. To all of which I have hereunto set my hand and seal, this, the 25th day of July, one thousand and eight hundred and seventy-four." This instrument was signed by Mrs. Jordan, the plaintiff's intestate, and was attested by the same three witnesses who had attested the former instrument; and it was admitted to record as a deed, on proof by one of the subscribing witnesses, on the 27th day of August, 1874. This deed was offered, the bill of exceptions states, " in connection with said deed to the personal property, and to prove, in connection therewith, that both of said deeds were executed and delivered *by* (?) the parties named in said instrument. It was admitted that said deed was signed and attested, and delivered to D. C. Jordan, at the same time the other was. But the plaintiff objected to said deed being read to the jury in connection with the first instrument, and in connection with the said testimony offered to be made by the defendants, on the same grounds on which he objected to the introduction of the first; and the court substained his objection, and refused to let said last-named instrument, with its probate and certificate of record, be read in evidence

[Jordan v. Jordan's Adm'r.]

to the jury in connection with said first instrument; to which ruling, also, the defendants excepted."

The rulings of the court to which exceptions were reserved, as above stated, are now assigned as error.

JAMES AIKEN, WM. B. MARTIN, and JOHN H. DISQUE, for the appellants, cited *Golding v. Golding*, 24 Ala. 122; *Adams v. Broughton*, 13 Ala. 731; *Thompson v. Johnson*, 19 Ala. 60; *Elmore v. Mustin*, 28 Ala. 309; *Hall v. Burkham*, 59 Ala. 349; 42 Ala. 589.

JOHN W. INZER, *contra*, cited *Gilham v. Martin*, 42 Ala. 265; *Walker v. Jones*, 23 Ala. 448; *Kinnebrew v. Kinnebrew*, 35 Ala. 628; *Brewer v. Baxter*, 41 Geo. 212; 5 Amer. Rep. 530; 1 Redf. Wills, 170–71.

BRICKELL, C. J.—Any instrument in writing, whatever may be its form, executed in conformity to the provisions of the statute of wills, manifesting a posthumous destination of property, real or personal, can take effect only as a will; and rights under it can not be asserted or recognized, until it has been admitted to probate in the proper forum.—*Dunn v. Bank of Mobile*, 2 Ala. 152; *Shepherd v. Nabors*, 6 Ala. 631; *Gilham v. Martin*, 42 Ala. 365; *Daniel v. Hill*, 52 Ala. 430; *Elmore v. Mustin*, 28 Ala. 309; *Kinnebrew v. Kinnebrew*, 35 Ala. 625. It is not a matter of moment, what is the designation of the instrument upon its face, nor how it may have been received and acted upon by the parties having beneficial interests under it. The true inquiry is, as to the effect and operation the party making it intended it to have. A will is defined to be an instrument by which a person makes a disposition of property to take effect after his death; and as its operation is postponed during life, it is, *in its own nature*, ambulatory and revocable. It is this ambulatory and revocable quality which distinguishes it from deeds, and other similar instruments of transfer or conveyance, taking effect, if at all, at the time of execution. Not that instruments of transfer or conveyance must necessarily pass present, immediate rights of possession or enjoyment; but, whatever is the right or interest created, it must pass at the time of execution. When the interest is created and passes by such instruments, the postponement of possession or enjoyment, or of vesting, is produced by the *express terms*, and not by the *nature* of the instrument. The illustration usually given in the books is of a deed by which the grantor limits lands to the use of himself for life, with remainder to

the use of A in fee. The usufructuary enjoyment is precisely the same, as if he should by his will devise such lands to A in fee. The difference between the two, however, is apparent. Immediately upon the execution of the deed, the remainder in fee vests, though possession and enjoyment is postponed. By no act of the grantor can it be revoked, annulled, defeated, or impaired. The execution of the will passes no estate, vests no title, creates no interest or right; all are dependent upon the death of the testator, in whom resides the absolute, unqualified power of revocation, though it is not reserved or expressed.

It is often a matter of extreme difficulty to ascertain, when an instrument is unskillfully drawn—when it employs alike apt words of conveyance and of devise or bequest, commingles provisions often found in deeds, with provisions generally found in wills; and there is an express postponement of possession and enjoyment until after the death of the party executing it—whether it is intended as testamentary, or as a conveyance operating presently to create estates, rights and interests, which are irrevocable. It is the intention of the party executing, to be collected from the terms of the instrument, when these are read in the light of surrounding circumstances, which must prevail.

The instrument proposed to be introduced as the evidence of the appellants' title, and of the divestiture of the title of the intestate, Mrs. Jordan, was executed and delivered by her; and it is properly executed either as a will, or as a deed. It disposes of money then in the possession of the intestate, and of money to be raised by a sale of personal property not otherwise specifically disposed of; and contains directions as to the burial and decoration of the grave of the maker. It commences with the words : · "For and in consideration of the love and affection I have for the following named persons, I do give, grant, and convey to each·one of them;" and it concludes, "and I also further request and enjoin upon my son David C. Jordan, that he take charge of, and manage in the interest, and to the benefit of my daughter, Arethusa A. Jordan, all the real and personal property herein and elsewhere *deeded* unto her, the said Arethusa A. Jordan. I also further request that my sons, Alexander Jordan and David C. Jordan, shall take charge of all the real and personal property herein and elsewhere *deeded*, and that they proceed to place the owners thereof in possession of the same, with the least delay and expense possible, *after my death* "; followed by the testimonial clause usual in deeds. There cannot be any particular importance attached to the word " *deeded*," though, in popular accepta-

tion it signifies a transfer by deed, found in the concluding clause of the instrument which we have quoted. In a preceding part of the instrument, is found this clause, " The proceeds of all the personal property and effects not otherwise herein *bequeathed*," which signifies a disposition by will. These words were doubtless used loosely and carelessly, and do not afford any valuable aid in arriving at the intention of the donor. That is more satisfactorily ascertained from a careful consideration of the whole structure, and all the terms of the instrument, to which we are confined, there not being any evidence of the circumstances surrounding the donor when it was executed, which would aid in ascertaining the intention. From the whole structure, and all the terms of the instrument, we are satisfied it is strictly testamentary— that it was intended by the donor as a disposition of all her personal property, to take effect after her death.

The sons, David C., and Alexander Jordan, are not nominated as executors; but the duties they are required to perform, are strictly executorial. It is only after the death of the donor, that they have capacity or authority to take any step; and then it is that they are to take charge of all the property, the money on hand, and the other property of which disposition is made, and to place the owners in possession. An irrevocable disposition of money in the possession of the donor, and of which, during life, possession is to remain with him, is not usual, nor can it be supposed it was in this instance contemplated. It would scarcely have been a violation of duty and of good faith, which a court of equity would have intervened to prevent, if the donor had made a hazardous loan, or an injudicious investment of the money, after the execution of the instrument; nor can we suppose that, under any circumstances, the aid of the court could have been invoked, to compel her to give security for its payment on her death; or that a receiver would have been appointed, to hold it during her life, that on her death it should reach the destination given it by the instrument. Nor can it be supposed that it was the intention, if from any cause the identical money on hand at the execution of the instrument should have been lost or converted, and at her death there was other moneys sufficient to meet the dispositions of the instrument, that the right of the donees should not attach to such moneys—that their rights were confined and limited to the identical money in the hands of the donor when the instrument was executed. Yet, if it is a deed, speaking and taking effect from its execution, that would be the consequence; while, if it is a will, speaking and taking effect from the death of the donor, their rights would attach

to the moneys then on hand. Again, the disposition is of all the personal property of the donor; and if it be a deed, it strips her of all right and interest therein, except possession during her life. It is evident, portions of this property must be consumed in the use, and much of it was of that kind which may be designated *perishable.* If the instrument was irrevocable—if it was a deed, and she was limited to the use for life—she would have been subject to disturbance by the donees in remainder, if wasteful in the use, or negligent in the care of the property. Again, the gift to the daughter Arethusa, of other things, is of " a horse to be selected of her own choice out of my stock of horses; also, twelve months support out of any provisions or proceeds of the crops grown upon my place." This, taken in connection with the gifts of feather-beds to her children and grand-children, and with the directions for the burial and decoration of the grave of the donor, indicate that her purposes were testamentary. And when the instrument is examined in all its parts—when the consequences of construing it as a deed, and the character of the property upon which it operates, are considered—we can not avoid the conclusion, that it is strictly testamentary ; if these consequences had been explained to the donor, at the time of its execution, and of her the inquiry had been made, whether she intended conveying an interest that would vest before her death, and would be irrevocable, that she would have answered it negatively ; that her purpose was a disposition taking effect on her death, leaving her during life the unqualified dominion of ownership, with all its incidents.

The instrument executed on the same day, purporting to be a conveyance of lands, is, doubtless, the instrument referred to as passing property " *elsewhere deeded.*" That it may and ought to be looked to, in determining whether the instrument under which title to the personal property is claimed is a deed or a will, we do not doubt. All contemporaneous instruments, referring the one to the other, should be considered in construing either; and when two instruments have been contemporaneously executed, the one in form a will, and the other a deed, the nearness of the one act to the other has induced the courts to regard them as one.—1 Jarman on Wills, 15. It will not follow, however, because the instrument relating to the lands is a deed, that the instrument relating to the personalty would, of necessity, be a like conveyance. An argument could be drawn, of more or less importance, from the fact, dependent upon the uncertainty in which its doubtful and ambiguous terms might leave the mind. If the two instruments were embodied in one, yet, it could be testamentary in one part, and a

present conveyance in another.—*Kinnebrew v. Kinnebrew*, 35 Ala. 628. Without determining whether the instrument relating to the lands should be regarded as testamentary, or as a deed, it is too variant and distinct in its terms to control the dispositions of the personal property.

The rulings of the Circuit Court were in conformity to these views, and its judgment must be affirmed.