KING *v.* SLATER.

Opinion delivered December 5, 1910.

1. DEEDS—RESERVATION OF LIFE ESTATE.—A deed reserving a life estate in the grantor, and providing that the deed shall be absolute at the grantor's death, is valid. *Lewis* v. *Tisdale,* 75 Ark. 321, followed. (Page 592.)

2. EVIDENCE—DECLARATIONS OF GRANTOR.—The acts and declarations of a person in possession of a tract of land are admissible to show the character and extent of his possession, but not to contradict his deed to another. (Page 593.)

Appeal from Union Chancery Court; *J. M. Barker,* Chancellor; affirmed.

*Gaughan & Sifford,* for appellant.

1. The question of the delivery of the deed is one of intention of the grantor. 74 Ark. 119; 77 Ark. 92; 124 S. W. 779. The preponderance of the testimony shows that Mary N. Van Hook never intended to deliver the deed to appellee.

2. Evidence of statements made by Mrs. Van Hook to other parties was admissible, first, because plaintiff himself introduced evidence of such statements before appellants introduced any witnesses. 14 Ark. 513. Second, because several of these statements were made while they were living together in confidential relations. And, third, because this case falls within the exception to the general rule, and within the rule announced in 59 Ark. 613.

3. Appellee did not perform the consideration. He was under obligation to bear with patience and tolerance the whims and caprices of his aged grandmother, and certainly none of the things said and done by her was sufficient to prevent him from carrying out his contract. 47 N. W. 768; 95 N. W. 741.

*Mahoney & Mahoney,* for appellee.

1. Evidence to prove statements made by Mrs. Van Hook in derogation of appellee's rights was inadmissible. 1 Greenleaf, 139; *Id.* 213.

2. The evidence of Mrs. Van Hook's intention to deliver the deed is manifested by her acts and directions to appellee, and that it was delivered pursuant to such intention is clear. 74 Ark. 119; 77 Ark. 92.

3. The evidence is ample that appellee performed his contract fully until he was compelled by Mrs. Van Hook to leave the place.

HART, J. Both appellee and appellants herein claim title to the lands in controversy from the same source. Mary N. Van Hook owned the lands. Appellee was the grandson of Mary N. Van Hook, and in 1896, at the request of both his grandparents, came to live with them and take care of them. R. C. Van Hook,

the husband of Mary N. Van Hook, died in October, 1900. Prior
to his death, he conveyed the lands to his wife. Appellee con-
tinued to live with her after his death, and in 1902 she executed
to him the following deed in consideration that he should support
her during her natural life: "Know all men by these presents:
That Mary N. Van Hook, a widow, for and in consideration of
the sum of one dollar cash paid, the receipt of which I acknowl-
edge, and the further consideration that the said Henry N.
Slater is to allow me to use and occupy the land herein con-
veyed during my lifetime, and in case I leave the land he is
to pay me $85 per year, and at death this deed shall be absolute,
and at such time I do hereby grant, bargain, sell and convey
unto the said Henry N. Slater and unto his heirs and assigns
forever the following lands lying in the county of Union and
State of Arkansas, towit: east one-half of southeast quarter of
section 14; southwest quarter of southeast quarter section 14;
east one-half of southwest quarter of section 15; fractional north-
east quarter of section 30, and south one-half of southwest
quarter of section 13, all in township 18 south, range 15 west,
containing in all 430 acres more or less. To have and to
hold the same unto the said Henry N. Slater and unto his heirs
and assigns forever with all appurtenances thereunto belonging.
And I hereby covenant with the said Henry N. Slater that I will
forever warrant and defend the title to said lands against all
claims whatever. Witness our hands this 26th day of Septem-
ber, 1902."

The acknowledgment to the deed bears date of November
12, 1902. Mary N. Van Hook remained in possession of the land
until her death, which occurred in February, 1909. Appellee
continued to reside with his grandmother until August, 1905,
when he left the place. It is contended that the deed was de-
livered to him at the time it was executed, and that he did not
carry out his contract to live on the place and take care of his
grandmother because she would not permit him to do so. It is
the contentions of appellants that the deed to appellee was never
delivered, and that he left his grandmother without cause and
refused to longer support her.

After appellee left her, Mrs. Van Hook went to live with
her daughter, Callie V. King, and lived with her until her death,
which occurred as above stated in February, 1909.

On December 17, 1908, Mrs. Van Hook conveyed the lands in controversy by deed to appellants in consideration that they should take care of her during her natural life. Appellants did not then know of the deed made to appellee. After the death of Mrs. Van Hook appellee instituted this suit in the chancery court against appellants to cancel the deed made to them as a cloud upon his title. The chancellor found in favor of appellee, and entered a decree cancelling the deed to appellants as cloud upon appellee's title, and awarded him possession of the lands. To reverse that decree this appeal is prosecuted.

The deed dated September 12, 1902, was effective to convey the title to appellee if it was delivered. *Lewis* v. *Tisdale,* 75 Ark: 321. Was it delivered?

Appellee testified positively and unequivocally that it was delivered to him at the time it was executed. Alice Barksdale, a neighbor, testified that after Mr. Van Hook's death, Mrs. Mary N. Van Hook told her that she had deeded the lands in controversy to appellee. Tom Van Hook testified that his grandmother, Mary N. Van Hook, told him that she had conveyed the land to appellee, and that she had given him the deed. Eliza W. Nelson, the mother of appellee and sister of appellant Callie V. King, testified that her mother told her that she intended for appellee to have the land, and that when the deed was made she was present, and that her mother told Dr. Pinson, before whom the acknowledgment was taken, that she intended for appellee to have it.

To overcome this positive and direct testimony, appellants introduced evidence tending to prove that in 1904 Mrs. Van Hook executed a second deed to the same lands to appellee which contained different terms and conditions; and that appellee knew of the execution of this deed, and of the fact that it was not delivered to him, but was kept in the possession of Mrs. Van Hook. They also introduced W. J. Pinson, who was the officer before whom the acknowledgment of the first deed was taken. He at first stated after the first deed was acknowledged it was handed back to Mrs. Van Hook and by her taken out of his office. Pinson was recalled by appellants, and stated that a re-examination of the deed shows it to have been changed from what it was as originally executed; that the deed, as it now appears in the record, was acknowledged by Mrs. Van Hook

on November 12, and that after the new acknowledgment was taken he handed the deed back to her, and she took it out of the office.

On cross examination he said that he did not remember whether he handed the deed to appellee or Mrs. Van Hook, or whether appellee was present. Appellee had already testified that he was present, and that Pinson gave him the deed at the direction of his grandmother. It is also shown that, after the execution of the first deed, Mrs. Van Hook conveyed by deed a part of the lands with the knowledge and consent of appellee. Appellee states that at the same time other lands were purchased by her, and the deed made to him in lieu of that part which she sold.

Appellants also introduced evidence of several persons residing in the neighborhood who testified that Mrs. Van Hook had told them that she had never delivered the first deed to appellee, and that he was not taking care of her in the way he had agreed to do. The fact of the execution to appellee of a second deed different in terms and conditions from the first could not operate to divest his title if it had become invested by the delivery of the first deed; but it is of probative force to show that the first deed was not in fact delivered. While it is shown that appellee had knowledge that the second deed had been executed by his grandmother, and that it was being retained in her possession, it is not shown that he knew of the conditions imposed by it, and he testifies that he understood that it had been executed because the first deed had been lost, and within a few months after its execution he found the first deed, and gave no further consideration to the second deed.

The declarations of Mrs. Van Hook to her various neighbors that she had not delivered the deed to appellee is not competent.

It is the settled rule that the acts and declarations of a person in possession of a tract of land are admissible to show the character and extent of his possession, but not to contradict the title. *Hughes Bros.* v. *Redus,* 90 Ark. 149; *Jeffery* v. *Jeffery,* 87 Ark. 496; *Seawell* v. *Young,* 77 Ark. 309; *McGuire* v. *Lovelace,* 128 S. W. (Ky.) 309; *Phillips* v. *Laughlin,* 2 Am. & Eng. Ann. Cas. 1. In the case of *Pentico* v. *Hays,* (Kan.) 9 L. R. A.

(N. S.) 224, the precise question raised here was decided adversely to the contention of appellants. The court held: "In such a case, on a trial to determine title to the land being had after the death of the mother, statements made by the mother after the recording of the deed may not be proved in derogation of the title of the child or its grantee." In that case as here the question at issue was whether the deed had been delivered. This court in the case of *Prater* v. *Frazier,* 11 Ark. 249, held: "The declarations of a donor against the title of the donee, made in his absence, are not admissible in evidence to defeat the title of the latter." The record does not affirmatively show that the chancellor ruled out this testimony; but the presumption is that his finding was based upon the testimony which was competent.

Upon the whole case, we conclude that the finding of the chancellor that the deed was delivered is not against the weight of the evidence, and it will be sustained.

The evidence shows that appellee was kind to his grandmother, and carried out his contract to live with her and support her until she caused him to leave.

The decree will be affirmed.