## MEWES v. MEWES.

### Opinion delivered January 4, 1915.

1. DEEDS—CONSIDERATION—PAROL EVIDENCE TO VARY.—The only effect of the naming of the consideration in a deed is to estop the grantor from alleging that the deed was executed without consideration; for every other purpose it is open to explanation, and may be varied by oral proof.

2. Deeds—consideration named—advancement.—Deceased sold certain lands belonging to himself and defendant, his son, and, in order to make title, defendant gave deceased a deed to his lands for a consideration stated in the deed greatly in excess of the contract price of sale which deceased had made with the purchaser. *Held*, under the evidence it was the intention of both parties that each receive from the sale the same amount per acre for their respective lands, and that the naming of the larger consideration in the deed from defendant to his father was not evidence of deceased's intent to make an advancement to his son.

3. Actions—parties—descent and distribution.—Deceased sold lands belonging to himself and his son and the money was deposited in bank. *Held*, in an action to determine whether the money was the property of the son or the widow and heirs of the deceased, the administrator was not a necessary party, but he is a necessary party in an action looking to the distribution of the assets of the estate.

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; reversed.

*W. N. Carpenter* and *Sam Frauenthal,* for appellants.

1. The evidence clearly shows that the $6,600 in the Home Bank of DeWitt belongs to the estate of J. J. Mewes, and his widow, therefore, is entitled to one-third of it as her dower.

It is clear from the evidence that the true consideration which J. J. Mewes was to receive for his interest in the lands was $25 per acre, aggregating $7,000. The rule is that the true consideration may be shown by parol, no matter what consideration is recited in the deed. This can be shown by direct testimony, and also by the facts and circumstances in the case. 54 Mo. App. 636; 68 L. R. A. 929, note; 18 Ark. 65; 90 Ark. 426; 15 Ark. 275; 75 Ark. 89; 82 Ark. 492; 101 Ark. 603; 3 Enc. of Ev. 390; 20 L. R. A. 102.

2. The evidence shows that M. J. F. Mewes obtained from his father, J. J. Mewes, an undivided one-half interest in certain portions of the land involved in this suit, that he did not pay for the same and is still indebted to the estate therefor.

3. The court erred in rendering judgment against the plaintiff and the surety upon the injunction bond.

The injunction issued did not stay the proceedings upon any judgment or final order of any court. Sections 3998, 3999 and 4000, Kirby's Digest, apply only to cases where the enforcement of a judgment is enjoined. 52 Ark. 354; 48 Ark. 21; 105 Ark. 210.

*John L. Ingram,* for appellees.

1. The consideration placed in the deeds by J. J. Mewes himself was $13,600. There is no proof whatever that such consideration was fictitious, or that it represented a fictitious value. The $6,600 belongs to M. J. F. Mewes, but, if not, it does not follow that the widow of J. J. Mewes has a dower interest in it. The whole of the lands deeded to M. J. F. Mewes at the request of J. J. Mewes, was so deeded prior to the marriage of J. J. with Frederika Mewes. There was never at any time any seizin of the land by J. J. Mewes and the legal title never rested in him, but on the contrary it was a finished transaction at the date of the marriage. 67 Ark. 413; 7 Words & Phrases, 6397, 6398; 11 Hun. 251; 40 Fed. 224; 58 Pac. 95; 47 Mass. 433, 444; 27 Ark. 306.

2. The burden of proof was on the appellant to show that M. J. F. Mewes did not pay J. J. Mewes and that he is indebted to the estate. There was no competent proof to sustain this allegation.

3. There was no error in giving judgment on the injunction bond. Under the terms of the bond its signers undertook to pay appellant the damages he might sustain by reason of the injunction. The proof shows that he was damaged 10 per cent of the amount tied up by the order, and the court allowed him 6 per cent for the time the order was in force. 90 Fed. 15.

WOOD, J. This suit was instituted by the appellants, the widow and certain heirs of J. J. Mewes, deceased, against the Home Bank of DeWitt and M. J. F. Mewes, to restrain the bank from paying over to M. J. F. Mewes the sum of $6,600 on deposit in said bank, and to have M. J. F. Mewes account to them and to recover of him the dower interest of the widow and the interest of the heirs in the funds, alleging that the same was the prop-

erty of the estate of J. J. Mewes, deceased. They alleged, in short, that J. J. Mewes had contracted to sell 960 acres of land to one Tindall at the sum of $27.50 per acre, or for a total sum of $26,400; that included in the sale were 280 acres belonging to M. J. F. Mewes, and that he was entitled out of the proceeds of the purchase money, to the sum of $7,000, which was at the rate of $25 per acre. They prayed that M. J. F. Mewes be required to account for the sum of $24,000, and the difference between $26,400, for which J. J. Mewes contracted to sell the land and the sum of $24,000, which M. J. F. Mewes accepted therefor; that the $6,600 in the bank be ordered paid into court, and that the widow have her one-third interest thereof and also one-third of all the moneys due from M. J. F. Mewes to the estate of J. J. Mewes, and that the remainder be distributed among the heirs of J. J. Mewes according to their respective interests.

The answer admitted the sale of the lands, but alleged that the amount for which they sold was $24,000 in cash. Alleged that M. J. F. Mewes was to receive for his lands included in the sale the sum of $13,600 instead of $7,000, as alleged in the complaint; that according to a contract made with the widow and the other heirs of J. J. Mewes, certain mortgage indebtedness on the land was to be paid out of the proceeds of the purchase money and was chargeable to the estate of J. J. Mewes. The answer is a lengthy one, setting forth, in its admissions and denials, the grounds for the contention of appellee M. J. F. Mewes in the trial court that out of the proceeds of $24,000, which was actually received in cash from the sale of the lands, which were owned by himself and his father, he was to receive the sum of $13,600, and that when this sum was paid him there would be nothing left of the $6,600 on deposit for which the appellants were seeking to have him account. The issues raised by the pleadings are principally issues of fact.

The facts are substantially as follows: J. J. Mewes owned 680 acres of land; his son, M. J. F. Mewes, owned 280 acres. They were both anxious to sell the land, and

either one of them had the right to sell all of it, and both were trying to sell it. J. J. Mewes entered into a contract with one Tindall to purchase all the land. The understanding was that the purchaser should pay $24,000 in cash if it were possible to do so at the time the sale was completed, but, if not, then he was to pay, on a time basis, the sum of $27.50 per acre. The purchaser succeeded in raising the $24,000 in cash, and that was the consideration paid.

To enable J. J. Mewes to carry out his contract for the sale of the lands, including those belonging to his son, it was necessary for him to get deeds from his son for these lands. Accordingly deeds were prepared from M. J. F. Mewes to J. J. Mewes, one deed conveying 160 acres, in which the consideration named was $10,000, and the other conveying 120 acres, in which the consideration named was $3,600. These deeds were sent to M. J. F. Mewes, who lived at Golden, Illinois, and they bear date April 2, 1909, the same date that the deeds were executed from J. J. Mewes to Tindall, conveying the entire 960 acres of land, and in which the consideration named was $24,000. The deeds from J. J. Mewes to Tindall were deposited in the German-American Bank of Stuttgart and were delivered to the purchaser by the cashier of the bank, under prior instructions from J. J. Mewes, upon payment of $24,000 in cash. J. J. Mewes died May 2, 1909.

After the death of J. J. Mewes appellee M. J. F. Mewes took charge of his father's affairs. The German-American Bank paid over to him the $24,000. Out of this sum he paid to himself $7,000 and other amounts, debts of the estate of J. J. Mewes, which brought the total sum paid out to $17,400, leaving on deposit in the Home Bank of DeWitt the sum of $6,600.

Soon after the death of J. J. Mewes the widow and heirs entered into an agreement whereby the widow was given certain articles of personal property and was to have one-third of all the personal property of the estate, and it was agreed that the indebtedness of the estate was

to be paid out of the money obtained from the sale of the lands to Tindall.

The principal contention of appellants, and the only one necessary to be considered here, is that the $6,600 in the Home Bank of DeWitt belongs to the estate of J. J. Mewes. They claim that the lands of M. J. F. Mewes were sold for him by his father, J. J. Mewes for the same consideration as were the individual lands of J. J. Mewes, and that in the division of the purchase money for these lands M. J. F. Mewes was only to receive for the purchase price of his lands per acre the same that J. J. Mewes was to receive.

The appellee M. J. F. Mewes contends, on the other hand, that he was to receive the consideration named in the deed which he executed to his father, towit, $13,600; that this was the price that his father intended that he should receive as the consideration for the sale of his lands.

The testimony of Tindall, the purchaser, bearing upon this subject is as follows: "I asked Mr. Mewes about the time of making our deal if M. J. F. Mewes would make a deed for his land. He said that he would; that they were both anxious to sell the land and that either one had the right to sell all of it, and that both were then trying to sell the same. M. J. F. Mewes verified his father's statement in this regard."

Nowhere does M. J. F. Mewes deny the fact, which this testimony establishes, that he knew before the lands were sold that the consideration for the whole tract, including his lands, was $25 per acre in cash. He did not object to the sale of his lands at this price. He states that his father wrote him about the contract between himself and Tindall a few days before the deeds were received for him to execute. The above testimony shows, he was anxious to sell the lands and knew the consideration that his father was receiving for the same. His half of the purchase price at $25 per acre would be $7,000, and this is the sum that he allowed himself when he had full control of the entire sum received as a consideration for

the sale. Instead of taking out the sum of $13,600 as his part of the purchase price for which the lands sold, he took $7,000, and his own testimony shows that he was proceeding to divide up the remaining $6,600 as follows: He gave one sister a check for $1,650, another a check for $1,650, and had intended to send to the children of another deceased sister the sum of $1,650, and to keep the remaining $1,650 for himself as one of the heirs. This division of the $6,600 was not consummated because the injunction suit was commenced against him and the checks for that reason were not honored.

This testimony convinces us that before the institution of this suit appellee M. J. F. Mewes regarded the $6,600 now in controversy as the property of his father's estate, and that the thought of claiming the same as his individual property was born in his mind after the institution of the injunction suit.

Appellee's contention now is that the consideration he was to receive in the sale of the lands was $13,600. In other words, that his lands were to bring him in the sale the sum of nearly $50 an acre, whereas if he received this price, his father, according to the total purchase money actually received, would only get the sum of about $15 per acre for his portion of the lands. It is not pretended by appellee M. J. F. Mewes that his father bought his lands and was to pay him nearly $50 per acre therefor, while he was selling the same lands at $25 an acre. It is not claimed by him that there was any contract between himself and his father by which his father was to purchase his lands before the sale. Appellee only contends that he is entitled to $13,600 as his portion of the purchase money because that was the consideration named in the deeds to his father. He was asked: "By what right do you claim it?" and answered, "By the consideration of my father's deed. I considered what my deeds called for." He was asked this question: "If your deeds called for $10,000 and it sold for $5,000 you would go by what was in the deed and not what it sold for?" and answered, "Yes, sir."

(1)   But the well settled rule of law is that "the only effect of a consideration in a deed is to estop the grantor from alleging that the deed was executed without consideration. For every other purpose it is open to explanation and may be varied by parol proof." *Vaugine v. Taylor,* 18 Ark. 65; *Pate* v. *Johnson,* 15 Ark. 275; *Carwell* v. *Dennis,* 101 Ark. 603; *J. H. McGill Lbr. Co.* v. *Lane-White Lbr. Co.,* 90 Ark. 426; *Morton* v. *Morton,* 82 Ark. 492; *St. Louis & N. A. Rd. Co.* v. *Crandell,* 75 Ark. 89.

(2)   It was wholly immaterial, as to whether or not the appellee M. J. F. Mewes had bought and paid for, or whether his father had given him the lands which were included in the sale made by his father to Tindall. For the purposes of this case, it may be conceded that he had fully paid for these lands, but it is beyond controversy that he intended that his father should sell the same for him for a consideration of $25 an acre. The clear preponderance of the evidence shows that this was the sum that he was to receive. There is no testimony in the record to warrant a finding that his father intended to advance him the sum of $6,600 and in this way to prefer him over his other children. The mere fact that the father had the sum of $13,600 named as the consideration in the deeds for the purposes of the sale to Tindall did not tend to prove that he intended an advancement of all above the consideration of $25 per acre to his son M. J. F. Mewes.

Our conclusion, therefore, on the evidence, is that the $6,600 on deposit with appellee Home Bank of DeWitt is the property of the estate of J. J. Mewes, and that the court erred in dismissing the appellants' complaint for want of equity. This conclusion makes it unnecessary to consider the other questions presented.

(3)   The administrator was not a necessary party to this suit for the purpose of determining as to whether the $6,600 on deposit with the Home Bank of DeWitt was the individual property of M. J. F. Mewes, or the property of the widow and heirs of J. J. Mewes. The ad-

ministrator however will be a necessary party when the assets of the estate are distributed.

The judgment is therefore reversed and the cause is remanded with directions to grant appellants' prayer for injunction against the appellee bank, to set aside the judgment rendered against appellant Frederika Mewes, and the sureties on her injunction bond, and, with permission to appellants, if so advised, to amend their pleadings, and to make the administrator of the estate of J. J. Mewes a party, and for such other and further proceedings as may be necessary, conformable to law and not inconsistent with this opinion.