## TRIBBLE v. TRIBBLE.

### Opinion delivered April 11, 1927.

1. WILLS—FORM OF INSTRUMENT.—An instrument by which a grantor conveys his undivided half interest to his wife and children, reserving to himself the use of the land for life, *held* a deed as to form, and not a will.

2. MORTGAGES—PAROL PROOF.—Parol evidence is admissible to establish that an instrument in form a deed was intended to be a mortgage.

3. MORTGAGES—INSTRUMENT IN FORM OF DEED.—Where evidence is clear and convincing to the effect that an instrument in form a deed was intended to secure payment of an indebtedness due by the grantor, a court of equity will declare the real intent and effect of the instrument as a mortgage.

4. MORTGAGES—PURPOSE OF EXECUTION OF DEED.—In an action to cancel a deed to the grantor's wife and children, reciting a consideration of love and affection, it was admissible to show that he had no love and affection for them, and that the real purpose of the instrument was to secure a loan from his wife's father.

Appeal from Garland Chancery Court; *W. R. Duffie*, Chancellor; reversed.

*A. B. Belding, James E. Hogue* and *Gibson Witt* for appellant.

*Martin, Wootton & Martin,* for appellee.

SMITH, J. This suit was brought to cancel a deed and a deed of trust, and, in support of the complaint praying that relief, the following testimony was offered: W. O. Tribble, the plaintiff, was forty-nine years old at the time his deposition was taken, and had been a chronic sufferer and unable to work for many years. He described his ailment as ossification, and his condition is pitiful. He is dying constantly, and yet lives in helpless misery. He is unable to perform the smallest service for himself, and one of his sisters testified that he required the almost constant care of one person, and has been in a rolling-chair for about six years. Plaintiff married a daughter of Y. A. Pearson, and two children were born to this union, one a married daughter named Ollie May Aldridge and the other a daughter named Annie.

The testimony of the wife and married daughter leaves the distinct impression that neither had any affection and but little sympathy for the husband and father. Tribble testified that he was compelled to leave his home and to go to the home of his sisters to receive the attention his condition required, and that neither his wife nor his daughter, Mrs. Aldridge, would have anything to do with him or come to see him, and that Mrs. Aldridge refused to answer his letters. His little girl came to see him occasionally. Mrs. Aldridge admitted that she had never done anything for her father, but stated that her physical and financial condition did not permit her to do so.

On July 27, 1918, Tribble brought suit for divorce against his wife in Clay County, Mississippi, where they both resided, and alleged cruelty and neglect and physical violence as grounds therefor. His wife answered, and denied these charges, and filed a cross-complaint in which she prayed a divorce on grounds similar to those alleged

in the complaint of her husband. This suit was compromised and settled through the intervention of Mr. Pearson, plaintiff's father-in-law. Mr. Pearson appears to have been a man of wealth and of dominating personality, and to have had considerable influence over Mr. Tribble. Under the settlement effected, Mrs. Tribble executed to her husband a contract releasing all claim to his Hot Springs property, and received from him a deed to other property in Mississippi and Texas. Tribble referred to this settlement as an equal division of his property with his wife. The divorce suit was dismissed.

Mrs. Tribble brought suit for divorce, and Tribble wrote a letter to the presiding judge, in which he stated that, if his wife was asking only a divorce, he would not file an answer, but, if she prayed alimony, he asked a postponement until he could employ an attorney. A divorce only was prayed, and no answer was filed, and a divorce was granted. This decree was rendered November 15, 1921.

Tribble and Pearson owned a lot as tenants in common of equal interests in the city of Hot Springs, and, on February 2, 1921, Tribble borrowed from Pearson $300, and gave as security therefor a deed of trust on his undivided one-half interest.

Tribble had heard of a doctor in Ohio who, he thought, might give him some relief, and he borrowed the money to get this treatment. His proposition was to pay the money back at the rate of $100 a year, and, to secure this money, he first proposed to assign to Pearson his half of the rent until the debt was paid. Pearson stated that he did not regard this as sufficient security, and the deed of trust here sought to be canceled was executed, and, at the same time and for the same consideration, and as further and additional security, Tribble executed a deed to his wife and two children to his undivided half interest in the Hot Springs property. The deed and the deed of trust described the same property. By this deed Tribble conveyed his undivided half interest to his wife and children, reserving to himself the control, use,

profit and right of occupancy for his life. This is the deed which Tribble seeks to cancel.

Tribble testified that he did not read this deed, and that he understood it was in effect a will, and that it was agreed between himself and Pearson that neither the deed of trust nor the deed should be recorded, and that both instruments would be canceled and surrendered to him when the $300 loan, with the interest thereon, was repaid, and that, in violation of his agreement, Pearson caused both instruments to be recorded a few days after their execution. This deed was defectively acknowledged, and it appears to be conceded that it was not entitled to be recorded on account of this defect.

Pearson died October 11, 1923, and this suit was not brought until after his death. Tribble explained this delay by saying that he did not commence the suit earlier because the indebtedness secured by the deed and the deed of trust had not been fully paid in the lifetime of Pearson.

Tribble also testified that he executed the instruments which he here seeks to cancel because he had confidence in Pearson and believed that he would do as he agreed, and, as he expected to repay the money, he did not hestitate to give any security required, and that both instruments were executed to secure the $300 loan. His necessities were pressing, and he hoped for surcease from further suffering, if not complete relief. Since the execution of these instruments Tribble has paid the taxes each year in his own name on his own undivided half interest.

When Pearson died, both the deed and the deed of trust were found with his papers, and the administrator of his estate testified that he mailed the deed to Mrs. Aldridge. Tribble testified that Mrs. Aldridge admitted to him that she and her mother knew nothing about this deed until after Pearson's death. Both Mrs. Tribble and Mrs. Aldridge denied that they were not advised of the existence of the deed. They testified that they knew it was to be executed, and had been executed and was in the possession of Pearson. Mrs. Tribble admitted that she

kept other valuable papers of her own in a safety deposit box in Clarksdale, Mississippi.

Tribble removed to the home of his sisters in 1918, and has since resided with them. He and they both testified that he desired to give them some compensation for their attention to him, and that, having agreed that services already rendered were worth $2,500, he executed to them a deed to his own undivided half interest in the Hot Springs property. The consideration for this deed was service already rendered and the continued care of appellant, and, in addition, these sisters deeded to their brother an undivided third interest in their home in Mississippi, where they lived.

These sisters filed an intervention in this suit, in which they claimed title to the lot in question, and they testified that, when the deed to them from their brother was executed and delivered, they were unaware of the prior deed from their brother to his wife and children.

There was offered in evidence an affidavit which Tribble made, which reads as follows:

"State of Mississippi, Clay county. This is to certify that I signed and delivered a deed to my Hot Springs property to my former wife and children, which deed was recorded in book 112, page 378, of the land records in Hot Springs, Arkansas, and later I executed a conveyance to my two sisters covering the same property, which deed was signed under compulsion when I was very ill.

"It is my desire that the deed recorded in book Vol. 112, page 378, remain on record, and the one to my sisters canceled, same having been obtained against my will, the consideration claimed in it being already paid.

"W. O. Tribble.

"Sworn to and subscribed before me this the 7th day of January, A. D. 1922. T. J. Watson, J. P. Dist. 4."

Much testimony was offered concerning this affidavit. Tribble and his sisters testified that Mr. Aldridge came to their house one day and stated that his wife wanted Tribble to spend the day with them. It was raining, and the sisters protested against Tribble being carried to

Aldridge's home that day, but Aldridge persisted and prevailed, and Tribble was carried to Aldridge's home. Tribble testified that, when he arrived at Aldridge's home, his daughter proposed that she would take him and take care of him for the remainder of his life if he would sign an agreement that, in consideration therefor, she might have his property after his death, and that he signed what he supposed was a contract to that effect. What he supposed was a contract proved to be the affidavit set out above. Tribble was carried home that afternoon after signing the affidavit, and the sisters testified that he was in high spirits on his return, and stated that he had made a contract with his daughter whereby she had agreed to take care of him for the remainder of his life. Tribble and his sisters all testified that the sisters agreed to this arrangement, but Mr. Aldridge refused to take appellant into his home. The execution of this affidavit was the last transaction between Tribble and Mrs. Aldridge, and she did not at any time offer to take him into her home.

Mr. and Mrs. Aldridge denied that any deception had been practiced upon Tribble to induce him to sign the affidavit, and that he had signed it with full knowledge of its purport.

The clerk of the chancery court of Clay County, Mississippi, who certified to the authority of the justice of the peace who took the acknowledgments to the deed and the deed of trust, testified that, when he made the certificate, Mr. Pearson, for whom he made it, remarked that he had gotten Tribble to do what he wanted him to do for some time, and that Tribble had executed these instruments only because he was very anxious to get some money.

The justice of the peace who took the acknowledgments testified that they were taken at the home of Pearson, and that Pearson stated at the time that he was loaning Tribble $300 to go off and get cured. The witness further testified that Pearson remarked to him, in Tribble's presence, that Tribble wanted to provide fur-

ther for his children after his death, and that Tribble made no objection to this statement. Mrs. Tribble had not obtained her divorce at that time. Witness did not know whether Tribble read the deed before signing it or not. Pearson made the remark that he was letting Tribble have $300 to go off and take treatment. Witness understood from the conversation at the time that Tribble was executing an instrument intended as a will to provide for his children in case of his death. Tribble and his wife were separated at the time, and the divorce suit was commenced a few months later. The papers had already been prepared before witness arrived at Pearson's home, and the only thing that Tribble spoke about was his trip.

Mrs. Tribble admitted she had made a settlement with her husband concerning a division of his property with him, and that this was done when the first divorce case was dismissed. She testified that she knew about the loan, and that the deed had no connection with it and was not given as security for it, and that her father kept the deed in his possession with her knowledge and consent and for her.

After this suit had been commenced, Tribble and his sisters, without consulting the attorney who represented them, and who resided in Hot Springs, conceived the idea that it might be advantageous for the sisters to execute a deed to Tribble reconveying the property to him, and they executed a deed to Tribble, which they sent to the attorney with directions to file it for record if the attorney thought the deed would improve Tribble's chance to recover the land. The attorney was of the opinion that the deed would not have this effect, and destroyed it, as he was authorized to do by the letter transmitting the deed to him.

As has been said, Tribble's sisters filed an intervention, and it is contended by them that their deed is superior to the deed from Tribble to his wife and children, for two reasons. First, that, as the deed from Tribble to his wife and children was defectively acknowledged, the record thereof did not constitute constructive notice

to them of its existence, and they had no actual notice thereof. Second, the deed from Tribble to his wife and children was executed without consideration, and its effect was to render him practically insolvent, and it operated therefore as a fraud upon them as existing creditors.

The court found the fact to be that the deed from Tribble to his wife and children was not executed as a result of fraud or collusion on the part of Pearson, and was in all respects a valid conveyance and passed the title to the parties named, and, although defectively acknowledged, was valid and binding between the parties thereto. The court also found that any right, title or interest which the interveners acquired by the deed from Tribble passed back to him by the deed from them to him, and that this after-acquired title inured to the benefit of Mrs. Tribble and her children. The court found that Tribble had paid the debt secured by the deed of trust, and that Tribble was not indebted to the estate of Pearson.

Upon these findings the court canceled the deed of trust and divested the title out of appellant and the interveners and vested it in Mrs. Tribble and her children, and confirmed their title thereto, subject to the reservation in the deed of the use of the land by Tribble for his life. Plaintiff and interveners have appealed.

It may first be said that the instrument executed by Tribble to his wife and children was in form a deed, and not a will. It is true it reserved to the grantor the use thereof during his life. But it was a conveyance of the fee to take effect upon his death.

In the case of *Bunch* v. *Nicks*, 50 Ark. 367, 7 S. W. 563, Mr. Justice BATTLE, speaking for the court, said: "To determine the character of an instrument, as to its being a will or deed, it is necessary to ascertain the intention of the maker from the *whole* instrument, 'read in the light of surrounding circumstances.' If the intention, at the time of the execution of the instrument, was to convey a present estate, though the possession be postponed until after his death, it is a deed; but, if the intention was it

should not convey any vested right of interest, but should be revocable during his life, it is a will. *Jordan* v. *Jordan*, 65 Ala. 301; *Williamson* v. *Tolbert*, 66 Ga. 127." See also *Field* v. *Tyner*, 163 Ark. 373, 261 S. W. 35; *King* v. *Slater*, 96 Ark. 589, 133 S. W. 173; *Lewis* v. *Tisdale*, 75 Ark. 321, 88 S. W. 579; *Cribbs* v. *Walker*, 74 Ark. 104, 85 S. W. 244; *Galloway* v. *Devaney*, 21 Ark. 526; *Hershey* v. *Clark*, 35 Ark. 17, 37 Am. Rep. 1.

But, while the instrument is in form a deed, it is well settled that parol evidence is admissible to show that it was in fact a mortgage. To accomplish that result the evidence must be clear and convincing, but, if the evidence measures up to that standard and it is clearly shown that it was intended for the instrument only to secure the payment of an indebtedness due from the grantor, a court of equity will not hesitate to declare the real intent and effect of the instrument. *Wimberly* v. *Scoggin*, 128 Ark. 67, 193 S. W. 264; *Hays* v. *Emerson*, 75 Ark. 551, 87 S. W. 1027; *Snell* v. *White*, 132 Ark. 349, 200 S. W. 1023; *Brewer* v. *Yancey*, 159 Ark. 257, 251 S. W. 677.

Appellees argue that, inasmuch as the deed of trust had been taken to secure the loan, an additional conveyance by way of security would have been fruitless. This would, ordinarily, be true, but this case has some unusual features. Pearson knew the strained relations between Tribble and his wife, and he knew that Tribble's sisters were giving him attention, and he may have contemplated the possibility of a conveyance from Tribble to these sisters. He knew also the physical condition of Tribble, and may have contemplated Tribble's death, in which event a foreclosure would be unnecessary if Pearson determined to allow the title to pass to his daughter.

The deed and the deed of trust were executed simultaneously, and the consideration for both appears to have been the loan of $300. It is true, as appellees contend, that the deed recites that it was executed in consideration of the love and affection of the grantor for the grantees, his wife and children, and that this is a

sufficient consideration. It is true also, as contended by appellees, that, while one may show the actual consideration of a deed, this cannot be done for the purpose of invalidating the conveyance. Tribble cannot show that he had no love or affection for his wife and children for the purpose of defeating the conveyance as being void for the want of consideration, but he had the right to show that the instrument, though a deed in form, was in fact a mortgage, and, as tending to establish that fact, he had the right to show the circumstances under which and the purpose for which the instrument was executed, not to defeat or invalidate it, but to establish its true character.

In the case of *Mewes* v. *Mewes,* 118 Ark. 155, 172 S. W. 853, it was said that the well-settled rule of law is that the only effect of a consideration in a deed is to estop the grantor from alleging that the deed was executed without consideration. For every other purpose it is open to explanation and may be varied by parol proof. See also *Sutton* v. *Sutton,* 141 Ark. 99, 216 S. W. 1052; *Hampton* v. *Haneline,* 125 Ark. 441, 189 S. W. 40; *Armstrong* v. *Union Trust Co.,* 113 Ark. 509, 168 S. W. 1119.

The deed from Tribble to his wife and children cannot therefore be declared void as being without consideration, because Tribble had no love or affection for them, but we may inquire what the purpose and intent of the instrument was, and we are convinced, after doing so, that its sole purpose was to afford additional security for the loan which Pearson demanded, and, as it was intended only to secure the loan of money, it is in fact a mortgage.

When this instrument was executed, Tribble and his wife were openly hostile to each other. He had already made a settlement with her of her marital rights in his estate by conveying to her what was considered to be one-half of the value of the property. Mrs. Tribble admitted that, in addition to this, she had kept all the household furniture and fixtures when Tribble left home,

but she said most of the property was hers, as she and her husband had bought it together.

There is no reason to believe that Tribble intended to give his wife any additional portion of his estate, yet the effect of the deed in question is to divest him of all his property save only the income therefrom during the remainder of his life. The rent was only about $55 per month, and this deed, if permitted to stand as such, denudes him of all other property and deprives him of the means of compensating his sisters or other persons for the attention he so urgently needs and which his wife and children had refused to give.

Having reached the conclusion that the deed was in fact a mortgage, it becomes unnecessary to determine whether, if a deed, it would have been in fraud of the rights of his sisters as existing creditors; and it is also unnecessary to consider whether there was such a delivery of the deed to Tribble from his sisters as operated to reconvey to him the title which he had previously conveyed to them and which, as the court found, passed, as an after-acquired title, to Mrs. Tribble and her children.

The decree of the court below appears to have been based upon the application of this principle. But, as we have said, we do not find it necessary to determine whether that principle is applicable here or not, because, in our opinion, the instrument, in form a deed, was executed to secure the payment of money, and was therefore a mortgage.

The decree of the court below will therefore be reversed, and the cause remanded with directions to enter a decree conforming to this opinion.